UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

SHANNON HELMS,   )
                 )
    Plaintiff    )
                 )
vs.              )   Case No.   4:17-cv-01452-HNJ
                 )
COMMISSIONER, SOCIAL SECURITY )
ADMINISTRATION,  )
                 )
    Defendant    )

## MEMORANDUM OPINION

Plaintiff Shannon Helms seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), regarding her claim for Disability Insurance Benefits (DIB). For the reasons stated below, the court **AFFIRMS** the Commissioner's decision.

## LAW AND STANDARD OF REVIEW

To qualify for disability benefits and establish entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations[1] define "disabled" as the

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499. Although the Social Security Administration amended the regulations on January 17, 2017, the amendment applies only to Social Security applications filed after the effective date, March 27, 2017. *Watkins v. Berryhill*, No. 7:16-CV-242-FL, 2017 WL 3574450, at *4 (E.D.N.C. Aug. 1, 2017),

"inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant on the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

---

*report and recommendation adopted*, No. 7:16-CV-242-FL, 2017 WL 3568406 (E.D.N.C. Aug. 17, 2017). Accordingly, the undersigned relies upon the prior versions in effect at the time of the ALJ's decision.

At step three, the evaluator must conclude the claimant is disabled if [the] impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairments would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii). That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if they suffer from a listed impairment. *See Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

3

If the claimant is successful at the preceding step, the fifth step shifts the burden to the Commissioner to prove, considering claimant's RFC, age, education and past work experience, whether the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520(f)(1). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); see also 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

**FACTUAL AND PROCEDURAL HISTORY**

Ms. Helms worked for more than 30 years at a hosiery mill, as a miller, a turn sew operator, an inspector, a knitter, and a pairer and boarder. In April 2008, Helms underwent right carpal tunnel release surgery. She continued to work until 2008, when the hosiery mill laid her off. (Tr. 41). Thereafter, she stayed home to care for her husband after he underwent two open heart surgeries. (Tr. 42, 64-67). In June 2016, after her date last insured, Helms underwent knee surgery to address problems occurring after she left the mill.

Ms. Helms initially applied for disability benefits on October 27, 2014, alleging disability beginning June 1, 2009. She alleged disability due to fibromyalgia, hypertension, diabetes, and hip problems. (Tr. 79). The ALJ held a hearing on August 23, 2016, at which time Helms was 53 years old. At the hearing, Helms alleged disability due to knee problems and overall pain.

In his December 2, 2016, decision, the ALJ first determined that Ms. Helms met the Social Security Act's insured status requirements through June 30, 2013. The ALJ further found that Helms had not engaged in substantial gainful activity since June 1,

2009, the alleged onset date, through the date last insured. At step two, the ALJ identified the severe impairments of status post carpal tunnel release on the right side and obesity. (Tr. 12).

The ALJ concluded at step three that, through the date last insured, Helms's combination of severe impairments did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). The ALJ determined Helms retained the ability to perform her past relevant work as a knitter. (Tr. 16). The ALJ proceeded to step five, finding Helms's RFC allows her to perform light exertional work as defined in 20 C.F.R. § 404.1567(b), with certain limitations.[2] (Tr. 14). The ALJ relied on the VE's testimony that Helms also could perform jobs in the national and local economy such as routing clerk, marker, and laundry worker. (Tr. 17).

On August 8, 2017, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1-4). Ms. Helms filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

---

[2] The ALJ described the following limitations:

> the claimant was able to frequently use right foot controls and frequently use right dominant hand controls. She could have frequently climb[ed] ramps and stairs but never climbed ladders or scaffolds. She could have frequently crouched, kneeled and crawled. The claimant should have never been exposed to unprotected heights or operated commercial motor vehicles. In addition to normal workday breaks, she would have been off-task 5% of an 8-hour workday (non-consecutive minutes).

(Tr. 14).

**ANALYSIS**

In this appeal, Ms. Helms contends that the ALJ's opinion lacks support in substantial evidence, inasmuch as he found Helms capable of performing her past relevant work. (Doc. 13 at 10). In addition, Ms. Helms argues that substantial evidence does not support the ALJ's RFC to the extent he found she could frequently use right dominant hand controls or use her right hand frequently. (Doc. 13 at 10-11). Finally, Helms argues the ALJ erred by failing to pose a hypothetical to the VE which included all of her limitations, specifically limitations on use of her right hand. (Doc. 12 at 12). For the following reasons, Ms. Helms's arguments fail.

**I. The ALJ Properly Found Helms Capable of Performing Her Past Relevant Work Through the Date Last Insured**

A claimant eligible for DIB must establish the onset of a disability on or before the last date for which they were insured. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*). If a claimant becomes disabled after losing insured status, the Commissioner will deny the claim despite a disability. *See McLain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x 935, 937 (11th Cir. 2017) (citing *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)); *Hughes v. Comm'r of Soc. Sec.*, 486 F. App'x 11, 13 (11th Cir. 2012) ("In order to qualify for DIB, an individual must prove that her disability existed prior to the end of her insured status period, and, after insured status is lost, a claim will

be denied despite her disability."); *see also* 20 C.F.R. § 404.131. Helms was last insured on June 30, 2013.

In rendering his decision, the ALJ considered all medical records. However, the only medical records which predated her date last insured demonstrate substantial evidence supports the ALJ's decision. Dr. William Hartzog treated Helms for wrist pain in 2008, resulting from heavy lifting associated with her job. He performed right carpal tunnel release surgery on April 23, 2008. (Tr. 378-79). At a follow up appointment on May 28, 2008, Dr. Hartzog noted Helms' complaints of moderate to mild pain displayed as disproportionate to his examination findings. Despite noting Helms' slow progress in physical therapy, he found no surgical complications and satisfactory relief of her neurological symptoms. (Tr. 373). By June 18, 2008, Dr. Hartzog again found Helms' complaints of pain disproportionate and opined Helms was not exerting maximum effort. He determined Helms had no significant abnormal findings and recommended she complete another week of physical therapy and return to work without restrictions on June 23, 2008. (Tr. 372). The only other medical record during the relevant time period, before June 30, 2013, pertains to a non-displaced tibia fracture in March 2012. (Tr. 230-31).

In medical records postdating the date last insured, Helms does not mention any problems with her wrist. In fact, neurological and musculoskeletal examinations

8

reflected normal strength, lack of pain or swelling, and full range of motion in her extremities. (Tr. 238-39, 255, 257, 262, 275, 282, 289, 303-04, 311, 363, 494, 499, 503).

The ALJ considered Helms's carpal tunnel syndrome under Listing 1.08, pertaining to soft tissue injuries. (Tr. 13). To meet this listing, the claimant's injury must be under continuing surgical management directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset. 20 C.F.R., pt. 404, subpt. P, App. 1, § 1.08. The ALJ concluded because Helms was not under surgical management and had not lost major function of the upper extremities, she failed to satisfy all the criteria of Listing 1.08. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'") (citation omitted).

The ALJ also considered Listing 11.01 (neurological disorders) and concluded Helms failed to satisfy the criteria because she suffered no neurological deficits described in the listing, including sustained disturbances of two or more extremities. (Tr. 13). *See* 20 C.F.R., pt. 404, subpt. P, App. 1, § 11.00, et seq.

Helms suffered a fractured patella in 2015, which Dr. Glenn Wilson repaired on June 1, 2015. (Tr. 463-64). When the hardware used to repair the fracture failed after

9

Helms again fell, Dr. Wilson performed a second surgery on July 8, 2015. (Tr. 336-37, 354-56, 399-400). By December 10, 2015, Helms expressed happiness with the outcome of the surgery, with mild but tolerable pain in the knee and improved range of motion of 0 to 95 degrees. (Tr. 416).

Dr. Wilson supplied an opinion dated January 6, 2016, in which he declared Helms unable to work because she would miss two to five days per month due to medical problems. (Tr. 433-35). He also opined Helms could only occasionally climb, balance, stoop, kneel, crouch, or crawl, but could sit for six hours. Dr. Wilson assigned limitations in Helms' ability to concentrate due to pain from her knee. The ALJ gave Dr. Wilson's opinion little weight, on the basis that he primarily used evidence after the date last insured in forming his opinion, overly relied on Helms's subjective complaints without consistent objective findings, and formed the opinion several years after the date last insured. (Tr. 15).[3]

The ALJ also found Helms' testimony less than credible. (Tr. 14, 15). If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*per curiam*). "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility. . . are not enough. . . ."

---

[3] Notably, Helms does not challenge the weight accorded to Dr. Wilson's opinion. Therefore, she has abandoned any such challenge. *See Robinson v. Astrue*, 235 F. App'x 725, 726 (11th Cir. 2007); *Pettus v. Astrue,* 226 F. App'x 946, 949 (11th Cir. 2007).

10

*Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*); see SSR 96-7p, 1996 WL 374186 at *2 ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). Nonetheless, credibility determinations remain within the province of the Commissioner, not the courts. *Taylor v. Comm'r of Soc. Sec.*, 213 F. App'x 778, 779 (11th Cir. 2006).

The ALJ adequately explained his reasons for finding Helms' testimony not entirely credible. (Tr. 14, 15). While Helms testified she cannot hold anything because her right hand releases and causes her to drop the item (Tr. 57), she also testified she cares for her husband, including assisting him with shaving and dressing, makes simple meals, does light cleaning and laundry, and experiences no difficulty with personal care. (Tr. 47, 63-64, 195, 196). The ALJ offered adequate explanation for discounting Helms's testimony as to her hand weakness. Further, the ALJ cited objective medical evidence refuting the severity of the alleged impairment. Thus, the

ALJ did not err in assessing Helms's credibility.[4] As a result, his decision rests upon substantial evidence.

## II. The ALJ Properly Formulated Helms's RFC

"Residual functional capacity" represents "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. A "regular and continuing basis" corresponds to eight hours a day, for five days a week, or an equivalent work schedule. *Id.* The regulations define RFC as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). In formulating an RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ examines all relevant medical and other evidence, including "any statements about what [the claimant] can still do that have been provided by medical sources," as well as "descriptions and observations [provided by the claimant, family, neighbors, friends, or other persons] of [the claimant's] limitations. . ., including limitations that result from . . . symptoms such as pain." 20 C.F.R. § 404.1545(a)(3). The claimant bears the burden of providing evidence the Commissioner will use to establish an RFC. *See* 20 C.F.R. § 404.1512(c). The

---

[4] While Helms does not explicitly challenge the ALJ's determination as to her credibility, that determination bears relevance to the overall finding that Helms retained the capability to perform her past relevant work, as well as the ultimate finding that she was not disabled as of her date last insured.

12

responsibility for determining a claimant's RFC resides with the ALJ. 20 C.F.R. §§ 404.1527(e), 404 .1546(c); SSR 96–5p.

A diagnosis alone does not indicate a disability or limitations on a claimant's ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("[T]he mere existence of [ ] impairments does not reveal the extent to which they limit [a claimant's] ability to work. . . ."); *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662-63 (11th Cir. 1987) (diagnosis does not equate to existence of impairment); *Mansfield v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability); *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (while doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses placed on Osborn's ability to work, a requisite to a finding of disability.").

The ALJ determined treatment records established Helms had recovered from her carpal tunnel surgery and had improved symptomology after the surgery, with no significant abnormal findings upon examination. (Tr. 15). Thus, the ALJ only limited Helms to frequent, rather than continuous, use of right hand dominant hand controls to accommodate Helms's status post carpal tunnel syndrome release. To accommodate her obesity and alleged issues with walking, the ALJ limited Helms to light work. Given the medical evidence of Helms's physical condition as of June 30, 2013, the ALJ correctly formulated Helms's RFC.

13

## III. The ALJ's Hypothetical Question to the VE Included All Reasonable Limitations

At Step Five, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *See* 20 C.F.R. § 404.1520(a)(4)(v); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). For a vocational expert's (VE) testimony to constitute substantial evidence, the ALJ must present a hypothetical question that "comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). However, the hypothetical need not include all of the claimant's symptoms. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007).

Helms argues the VE's testimony does not constitute substantial evidence because the ALJ's hypothetical to the VE did not include limitations on the use of her right hand. However, as discussed above, substantial evidence supports the ALJ's finding that Helms failed to manifest disabling impairment in her right hand before the date last insured, as well as his determination that her testimony about the intensity, persistence, and limiting effects of the symptoms display inconsistency with the medical and other evidence in the record. The ALJ was not required to include additional limitations in the hypothetical question to the VE in the present circumstance. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as

14

unsupported"); *Moreno v. Astrue*, 366 F. App'x 23, 29 (11th Cir. 2010) ("The ALJ did not err by failing to include [the claimant's] subjective symptoms in his hypothetical to the VE because the ALJ was not required to include limitations that it found to be unsupported."). In addition to finding Helms could perform her past relevant work, the ALJ also relied on the VE's testimony that there exist other jobs in the national and local economy Helms could perform. Because the ALJ's hypothetical to the VE included all impairments he properly found existed as of the date last insured, the VE's testimony rests on substantial evidence.

## CONCLUSION

Based on the foregoing analysis, the court **AFFIRMS** the ALJ's finding that Ms. Helms was not disabled within the meaning of the Social Security Act before her date last insured.

**DONE** this 26th day of November, 2018.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE